# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-8020/02-3724

_____

| | | |
|---|---|---|
| Lori Liles; Kristine Burgess; Robert Mettler; Rebecca Reynolds, on their behalf and on behalf of all others similarly situated, | * * * * * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Elena Del Campo; Lydia Rosario; Audra Phillips, | * * | District Court for the Southern District of Iowa. |
| | * | |
| Intervenor Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| American Corrective Counseling Services, Inc.; Donald R. Mealing, | * * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: October 20, 2003

Filed: December 2, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Lori Liles brought this action on behalf of a class against American Corrective Counseling Services, Inc. and its owner Don Mealing (collectively ACCS), alleging that their bad check restitution programs violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o, and state law.[1] Intervenors Elena Del Campo and Lydia Rosario filed similar suits against ACCS in Florida and California and were allowed to intervene after the parties in this case filed a joint motion for preliminary approval of a settlement agreement and for conditional class certification. The district court[2] granted the joint motion after noting that protracted settlement negotiations had taken place, and it also granted a motion by ACCS to enjoin related litigation. The intervenors appeal the injunction and seek leave to appeal the class certification. We deny leave for an interlocutory appeal and affirm.

ACCS is a private company based in California which contracts with local prosecutors to administer bad check misdemeanor diversion programs.[3] These programs give writers of nonsufficient fund (NSF) checks an opportunity to avoid criminal prosecution by voluntarily participating in them. The programs provide restitution to the check payee and instruct the issuer on how to manage home finances. ACCS contacts individuals who have written NSF checks and offers them an opportunity to participate in a bad check misdemeanor diversion program for a fee.

---

[1]The original complaint included claims for violation of the Iowa Debt Collection Practices Act (IDCPA), Iowa Code § 537.7102(5), and for common law abuse of process. The statutory claims were not included in subsequent amended complaints. Appellants Appx. at Tab 16.

[2] The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

[3]ACCS operates bad check misdemeanor diversion programs in at least fifteen states, including California, Georgia, Florida, Indiana, Illinois, Iowa, Minnesota, Maryland, Michigan, and Nevada.

A participating individual is required to pay ACCS the money owed on the NSF check, a program fee, and an additional processing fee. Participants are supposed to attend a class on writing checks, but ACCS allegedly fails to offer such classes in every state. After participants attend the class, the prosecutor is to dismiss the bad check charges.

Lori Liles received an official notice sent by ACCS after she wrote an NSF check to Wal-Mart in July 2000. The notice was printed on the stationery of a county attorney. It stated that a criminal complaint was being processed against her because of a NSF check and that she could avoid prosecution if she participated in the bad check restitution program. The notice required Liles to pay the balance on the notice within 30 days. That balance included the amount of the NSF check, plus a $10 returned item fee and a $125 program fee.

In September 2000, Liles filed this class action suit against ACCS in the United States District Court for the Southern District of Iowa. Her complaint alleged that the bad check restitution programs run by ACCS violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, the Civil Rights Act, 42 U.S.C. § 1983, and various tort laws. According to the complaint, the programs harass debtors, use false, deceptive or misleading debt collection practices, and falsely imply that legal actions have been or will be taken. Liles sought to represent a nationwide class consisting of persons who had received an official notice substantially similar to hers or who were otherwise contacted by someone affiliated with a bad check misdemeanor program in affiliation or under contract with ACCS. Similar lawsuits were filed in federal district courts in Georgia, Indiana, Florida, California, and Illinois.[4]

_____

[4]See Del Campo v. Am. Corrective Counseling Serv., Inc., et. al., Case No. C01-21151 PVT (N.D. Cal., filed Dec. 11, 2001); Barnhart v. Am. Corrective Counseling Serv., Inc., Case No. 01-C-5507 (N.D. Ill., filed July 16, 2001) (settled and dismissed July 31, 2002); Rosario v. Am. Corrective Counseling Serv., Inc., et

ACCS moved for summary judgment. The district court denied the motion as to the FDCPA and IDCPA claims, struck the requests for punitive damages and injunctive relief, and dismissed the abuse of process claims. After a second motion to dismiss was denied, Liles amended her complaint to exclude the IDCPA claims and moved for certification of a nationwide class. Shortly thereafter the parties entered into settlement negotiations, and Liles subsequently withdrew her motion for class certification. After lengthy negotiations, the parties filed a joint motion for preliminary approval of settlement and conditional certification of a nationwide class. ACCS later filed a motion to enjoin related litigation.

After the filing of the joint motion for preliminary approval of settlement and conditional certification of a nationwide class, Elena Del Campo and Lydia Rosario sought to intervene. The court granted the motion and allowed them to conduct extensive discovery. Five months later, the court held an oral hearing on the motions for conditional class certification and preliminary settlement approval. At the hearing the parties proposed a settlement to be paid out of the ACCS insurance policy.

Preliminary discovery and settlement negotiations revealed that the ACCS insurance policy was the only known asset available for settlement of these claims. The insurance policy is a wasting policy, and the value of the policy diminishes as funds are paid out. Although the policy originally had a $2 million limit, it has been drawn on to pay ACCS defense costs in this and related litigation. Ongoing defense costs will continue to deplete the policy, and continued litigation threatens to drain the fund completely. The proposed settlement includes notification to the estimated 800,000 class members and indicates that each would have to file a claim in order to

al., Civil Action No. 2:01-CV-221-FTM-29DNF (M.D. Fla., filed Apr. 30, 2001); Vanduyn v. Am. Corrective Counseling Serv., Inc., Case No. IP 01-0537 C T/G (S.D. Ind., filed Apr. 20, 2001) (settled and dismissed July 24, 2002); Calman v. Am. Corrective Counseling Serv., Inc., Civil Action No. 01-CV-0581 (N.D. Ga.., filed Mar. 1, 2000) (dismissed May 29, 2001).

participate in the settlement award. It also broadly releases all potential state and federal claims against ACCS and the prosecutors involved in the programs.

The intervenors oppose the proposed settlement and conditional nationwide class certification. They argue that the class certification did not meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b) and that the proposed settlement was not fair, adequate, or reasonable given the different state law claims available to various class members. Primarily to preserve the settlement fund, the court granted preliminary approval of the class settlement, conditionally certified the class, enjoined all related litigation, and set a court date for approval of a plan for class notification.

The intervenors petitioned for permission to appeal the district court class certification and later filed an appeal of the order enjoining related litigation. After these filings, Liles moved the district court to set aside the settlement, to decertify the class, to vacate its orders, and to dismiss the appeals. The court held a hearing on the motion to set aside the settlement and subsequently denied all the pending motions, stating that it had granted conditional approval of the settlement because it was fair, adequate, reasonable, and in the best interests of all the parties involved.

After the district court issued its order enjoining related litigation, federal courts in the Middle District of Florida and the Northern District of California stayed their proceedings. With different class representatives, counsel for the intervenor filed a new proposed class action against ACCS in the Northern District of California. ACCS then moved in this case to enforce the district court's order enjoining related litigation and for a finding of contempt or for amendment of the injunction order. The district court enforced its injunction and found the intervenor attorneys in contempt.

Intervenors claim that the district court erred in granting the conditional class certification and in enjoining related litigation. They request permission for an interlocutory appeal of the conditional class certification and seek decertification and reversal of the order enjoining related litigation.

A court of appeals may permit an appeal from an order granting or denying class action certification if taken in a timely manner. Fed. R. Civ. P. 23(f). The intervenors urge our court to grant an interlocutory appeal under the D.C. Circuit test for permitting interlocutory appeals in In re Lorazpam & Clorazepate, 289 F.3d 98 (D.C. Cir. 2002).[5] They argue that the district court did not make the findings required by Rule 23 when it conditionally certified the nationwide class. ACCS responds that an interlocutory appeal would be inappropriate here because the district court's class certification is not dispositive of the litigation and several significant hurdles must be met before a final settlement and class certification are approved.

We conclude that an interlocutory appeal would be premature in this case. Several steps remain before the district court finally approves class certification and any settlement. To permit an appeal at this stage would unnecessarily delay the resolution of the litigation and further jeopardize the limited assets available for resolving the claims. Permission for an interlocutory appeal of the conditional class certification should therefore be denied.

---

[5]Other circuits have also addressed the question of when to grant an interlocutory appeal under Rule 23(f). See In re Sumitomo Copper, 262 F.3d 134 (2d Cir. 2001); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138 (4th Cir. 2001); Newton v. Merrill Lynch et al., 259 F.3d 154 (3rd Cir. 2001); Prado-Steiman v. Bush, 221 F.3d 1266 (11th Cir. 2000); Waste Mgmt. Holding, Inc. v. Mowbray, 208 F.3d 288, 293 (1st Cir. 2000); Blair v. Equifax Check Serv., Inc., 181 F.3d 832, 833-36 (7th Cir. 1999). The facts in this case do not favor an interlocutory appeal under any of these formulations, and we need not undertake here the task of refining a circuit standard for review of such petitions.

We review an order enjoining related litigation for abuse of discretion. <u>United States v. New York Tel. Co.</u>, 434 U.S. 159, 164 (1977). The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Injunctions of related proceedings in other federal courts are appropriate when necessary for adjudication or settlement of a case. <u>See</u> <u>White v. Nat'l Football League</u>, 41 F.3d 402, 409 (8th Cir. 1994).

The district court enjoined proceedings in related litigation to preserve the settlement fund, to eliminate the risk of inconsistent or varying adjudications that would deplete the fund, to avoid confusion among the class members, and to save scarce judicial resources. The court acted within its discretion in issuing the injunction because enjoining related litigation was necessary to ensure the enforceability of the order approving the preliminary settlement and to prevent further draining of the limited settlement fund. As the district court found, neither settlement nor notification of class members could be achieved if the settlement fund were eaten up by litigation in other courts. Without enjoining related litigation, the court ran the risk of undermining the settlement that had been negotiated and preliminarily approved and of exhausting the only asset available for class recovery. We conclude that the court did not abuse its discretion in enjoining related litigation.

Accordingly, permission for an interlocutory appeal of the conditional class certification is denied, and the district court's injunction of related litigation is affirmed.

_____