# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 09-1069
_____

In re: Baycol Products Litigation,     *
-------------------------------------  *
                                       *
Peggy Ann Mays; George F. McCollins,   *
individually, and on behalf of all others *
similarly situated,                    *
                                       *
            Plaintiffs,                *
                                       *  Appeal from the United States
Keith Smith; Shirley Sperlazza,        *  District Court for the
                                       *  District of Minnesota.
            Respondents-Appellants,    *
                                       *
       v.                              *
                                       *
Bayer Corporation, a foreign           *
corporation, authorized to do business *
in West Virginia as Bayer Corporation, *
and also known as Bayer AG and Bayer   *
Pharmaceutical,                        *
                                       *
            Defendant-Appellee,        *
                                       *
Bayer AG, a foreign corporation;       *
GlaxoSmithKline, Inc., a foreign       *
corporation; SmithKline Beecham        *
Corporation; GlaxoSmithKline PLC,      *
                                       *
            Defendants.                *

_____

Submitted: November 17, 2009
Filed:  January 5, 2010
_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

Plaintiff George McCollins represented a putative West Virginia class in this multidistrict litigation against the defendants who manufactured and produced Baycol, a prescription cholesterol lowering medication.  His was one of thousands of similar Baycol lawsuits consolidated for pretrial proceedings in the district court, In re Baycol Prods. Litig., MDL No. 1431.  After the presiding judge[1] denied certification of the class McCollins sought to represent, two other former Baycol users from West Virginia, Keith Smith and Shirley Sperlazza, sought to certify a class in West Virginia state court.  Defendant Bayer Corporation brought a motion in this case for the district court to enjoin Smith and Sperlazza from relitigating in state court the certification of a West Virginia class.  Smith and Sperlazza responded by special appearance in opposition to the motion for injunctive relief.  The district court granted the injunction, and respondents appeal.  We affirm.

I.

Baycol was distributed from 1997 until August 2001, when the drug was withdrawn from the market after its use was linked to thirty one deaths in the United States.  In re Baycol Prods. Litig., 532 F.Supp.2d 1029, 1035 (D.Minn. 2007).  Tens

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

of thousands of former Baycol users have filed suit since the drug was withdrawn. The Judicial Panel on Multidistrict Litigation, see 28 U.S.C. § 1407, consolidated the federal cases in the district court for pretrial proceedings.

In August 2001, McCollins and two others initiated their putative class action in West Virginia state court. Defendants removed the case to federal court on diversity grounds, and it was subsequently transferred to the multidistrict court. By 2008 McCollins was the only remaining class representative. He had not experienced the side effect that led to Baycol's withdrawal from the market; undisputed record evidence showed that he had physically benefitted from the drug. Rather than suing for physical damages, he sought refunds for economic loss caused by the defendants' breach of warranties and violation of the West Virginia Consumer Credit and Protection Act (WVCCPA), W.Va. Code § 46A-6-101.

Respondents Smith and Sperlazza, purporting to represent a similar class with similar allegations, brought their case in West Virginia state court in September 2001. Since the one year statute of limitations on removal had run by the time complete diversity existed, see 28 U.S.C. § 1446, respondents remained in state court. Had their case been filed a few years later, defendants could have removed it pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

The multidistrict (MDL) district court has issued over 160 pretrial orders and engaged in extensive efforts to coordinate its proceedings with state courts handling Baycol cases. In 2002, the Plaintiffs' Steering Committee filed a Master Class Action Complaint and subsequently moved for certification of, among other classes, a nationwide refund class. In re Baycol Prods. Litig., 218 F.R.D. 197, 202 (D.Minn. 2003). The district court denied the motion, concluding that since such plaintiffs "would have to demonstrate that they were either injured by Baycol, or that Baycol did not provide them any health benefits[,]" common issues did not predominate

pursuant to Fed.R.Civ.P. 23(b)(3) and (c)(4). Id. at 213-14. A further barrier to class certification, the district court concluded, was the lack of uniformity among state tort laws governing unjust enrichment and breach of warranty. Id. at 214.

Defendants subsequently moved the district court to deny class certification of the West Virginia economic class proposed by McCollins,[2] and to enter summary judgment against McCollins on his individual claims. The district court granted the defendants' motions on August 25, 2008, after concluding that nothing in West Virginia law would alter its prior analysis that individual issues of fact predominate with regard to economic loss claims. In re Baycol Prods. Litig., McCollins v. Bayer Corp., et al., MDL No. 1431, No. 02-0199, slip op. at 11-12 (D. Minn. Aug. 25, 2008) (Order Denying Certification). Holding that under the WVCCPA, McCollins would need to "demonstrate Baycol was something other than what he bargained for" and that McCollins could not meet this burden since Baycol in fact lowered his cholesterol and resulted in no side effects, id. at 18, the court also granted summary judgment to the defendants on his individual claims. Id. at 19. No part of the order was appealed.

Shortly after the deadline expired to appeal the order denying certification, respondents moved for certification of a West Virginia economic loss class in state court. Bayer moved the district court to enjoin respondents, as absent putative class members in this case, from relitigating the previous decision denying certification of a West Virginia economic loss class. Respondents specially appeared before the

---

[2] McCollins characterized the defendants' motion as a motion to strike under Fed.R.Civ.P. 12(f), since the specific relief they requested was for "Plaintiff's Class Allegations [to] Be Stricken as a Matter of Law." The district court and the parties in this appeal considered the motion as one to deny class certification. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939-40 (9th Cir. 2009) (Rule 23 allows defendants to move preemptively to deny class certification prior to plaintiffs' moving for certification).

-4-

district court in this case to object to the motion for an injunction. The district court granted an injunction, and respondents filed this appeal.

## II.

Although the Anti-Injunction Act generally prohibits federal courts from interfering in state proceedings, it permits injunctions necessary to "protect or effectuate its judgments." 28 U.S.C. § 2283; see also All Writs Act, 28 U.S.C. § 1651 (providing statutory authority to issue injunction when justified). We review de novo the district court's determination that the Act's "relitigation exception" applies, Jones v. St. Paul Cos., Inc., 495 F.3d 888, 890 (8th Cir. 2007), and that it had personal jurisdiction over respondents, Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004).

"Because of the sensitive nature of federal interference with state court litigation," the relitigation exception "must be narrowly construed." Jones, 495 F.3d at 891. The district court's injunction was proper if collateral estoppel would bar respondents from seeking certification of a West Virginia economic loss class in state court. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988) (relitigation exception "founded in the well-recognized concepts of *res judicata* and collateral estoppel").

In determining the preclusive effect of the order denying certification, we rely on federal common law. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) (federal common law governs the preclusive effect of a dismissal in a diversity case); In re Bridgestone/Firestone, 333 F.3d 763, 767-68 (7th Cir. 2003) (applying federal law to determine the preclusive effect of a federal court's denial of class certification). We usually incorporate the collateral estoppel doctrine of the relevant state unless it is "incompatible with federal interests[,]" in which case "a contrary federal rule" may be justified. Semtek, 531 U.S. at 509.

We begin by considering the West Virginia collateral estoppel requirements:

(1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

State v. Miller, 459 S.E.2d 114, 120 (W.Va. 1995).

The issue presented by respondents' motion in state court for class certification was previously decided by the district court in this case. Respondents seek certification on the same legal basis of the same class already denied in this case. Respondents argue that the issues are different because the district court applied Fed.R.Civ.P. 23 while they moved for certification in state court under W.Va.R.Civ.P. 23. Respondents point to no relevant substantive or procedural differences between the two certification rules, however.

In order to reach the question of class certification, the district court appropriately decided a substantive issue of West Virginia law as to what a former Baycol user suing Bayer must prove under the WVCCPA. The district court determined that a plaintiff must show that Baycol injured or did not benefit him through an "in depth review of [his] medical records[.]" Order Denying Certification, slip op. at 12. In other words, the district court concluded that Baycol plaintiffs cannot state a claim under the WVCCPA without proof of harm or injury. Economic loss alone is insufficient. Certification under the state rule would undermine this conclusion of substantive state law properly made by the district court. See Canady v. Allstate Ins. Co., 282 F.3d 1005, 1018 (8th Cir. 2002) ("[A]ppellants may not . . .

recycle the same claims and issues in different courts, hoping to achieve the result they desire.").[3]

Though technically a procedural ruling, a certification determination "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (quotation omitted). Under federal rule 23(b)(3), common issues of fact or law must predominate over individual issues. A judge must delineate what issues of law exist to determine whether they are common to the class. See Blades v. Monsanto Co., 400 F.3d 562, 567 (8th Cir. 2005) (disputes "going to the factual setting of the case" and "overlap[ping] with the merits" may be resolved in a certification decision "[as] necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case"); see also In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006). Recognizing this phenomenon, federal courts sometimes apply a de novo standard of review to legal determinations made in the course of deciding whether or not to certify a class despite the overall abuse of discretion standard applicable to certification rulings. See, e.g., Yokoyama v. Midland Nat. Life Ins. Co., --- F.3d ----, No. 07-16825, 2009 WL 2634770, at *3 (9th Cir. Aug. 28, 2009); Andrews v. Chevy Chase Bank, 545 F.3d 570, 573 (7th Cir. 2008).

Respondents' argument that In re W. Va. Rezulin Litig., 585 S.E.2d 52 (W.Va. 2003), indicates that a West Virginia court might apply its own certification rule differently thus misses the point. In that litigation involving a diabetes drug, the West Virginia Supreme Court of Appeals reversed the denial of class certification for

---

[3]We acknowledge that some parts of Canady have been overruled. See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 821-22 (8th Cir. 2009) (theory that the All Writs Act provides an independent grant of subject matter jurisdiction abrogated by Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28 (2002)).

former Rezulin users who sought a refund as well as medical monitoring costs. The court recognized that a "conclusion on the issue of predominance [in a certification decision] requires an evaluation of the legal issues and the proof needed to establish them." Id. at 72 (quotation omitted). The state appellate court concluded that common issues predominated based on (1) its interpretation of medical monitoring claims under its decision in Bower v. Westinghouse Elec. Corp., 522 S.E.2d 424 (W.Va. 1999), and (2) its determination that a prima facie WVCCPA case does not require a plaintiff to allege specific damages but only to show that "she has purchased an item that is different from or inferior to that for which he bargained[.]" In re W. Va. Rezulin Litig., 585 S.E.2d at 73-75. These were substantive legal determinations necessary to support its conclusion that certification was appropriate in that litigation.

Likewise, the district court reached its certification decision in this case based on its own "evaluation of the legal issues and the proof needed to establish them[,]" namely its determination that all Baycol plaintiffs will need to show an individualized physical injury.[4] This conclusion has a preclusive effect and is inseparable from the certification question.[5] That respondents may disagree with the district court's legal conclusions about the WVCCPA is unavailing. See Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 763 (8th Cir. 2003) (application of collateral estoppel not dependent on correctness of prior decision).

---

[4]In addition, the district court observed that the West Virginia court based its Rezulin decision on its "reject[ion of] the argument that individual issues of damages predominated[,]" while here "individual issues of causation, not damages, predominated over common issues." In re Baycol Prods. Litig., McCollins v. Bayer Corp., et al., MDL No. 1431, No. 02-0199, slip op. at 7 (D.Minn. Dec. 9, 2008) (Order Granting Injunction).

[5]The putative McCollins class asserted breach of warranty and WVCCPA claims too, while respondents also alleged a common law fraud claim. The addition of a fraud claim does not change our analysis. "The same cause of action framed in terms of a new legal theory is still the same cause of action[.]" Canady, 282 F.3d at 1015.

The issues here are also distinguishable from those in <u>Chick Kam Choo</u>, where the Supreme Court considered the preclusive effect of a federal court's application of forum non conveniens. 486 U.S. at 149. Since the original federal decision there had discussed only federal forum non conveniens principles, its injunction preventing consideration of whether Texas state courts were an appropriate forum was "not within the relitigation exception." <u>Id.</u> A forum non conveniens determination is different from what is at issue here, for class certification is often entwined with substantive conclusions of state law.[6] <u>See</u> <u>Bridgestone/Firestone</u>, 333 F.3d at768 ("Determining the permissible scope of litigation is as much substantive as it is procedural."). In addition, Texas had an "open-courts" concept substantively different from the forum non conveniens analysis applied in federal court. <u>Chick Kam Choo</u>, 486 U.S. at 148-49. The state and federal certification rules here, by contrast, are not significantly different. <u>Compare</u> W.Va.R.Civ.P. 23 <u>with</u> Fed.R.Civ.P. 23.

Our holding today comports with the reasoning of <u>Bridgestone/Firestone</u>, in which the Seventh Circuit concluded that the relitigation exception permitted an injunction barring relitigation in state court of a federal court's denial of class certification. 333 F.3d at 769. The <u>Bridgestone/Firestone</u> plaintiffs sought national class certification in various state courts after it had been denied in federal court. Relitigation in state court of whether to certify the same class rejected by a federal court presented an impermissible "heads-I-win, tails-you-lose situation." <u>Id.</u> at 767. We agree.

The <u>Bridgestone/Firestone</u> court also reasoned that to the extent that the plaintiffs sought to "urge state courts to disregard [its earlier] judgment" on a state

_____

[6]This is not always the case. <u>See, e.g.,</u> <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,</u> 134 F.3d 133, 146 (3d Cir. 1998) (prior decision reversing certification of a settlement class on grounds unrelated to substantive conclusions of state law did not preclude a state court from subsequently certifying a settlement class according to its own procedural rule).

collateral estoppel principle of finality, "that course is cut off by <u>Semtek</u>'s proviso[,]" namely that "state rules that undermine the finality of federal judgments are not incorporated." <u>Id.</u> at 767-68; <u>Semtek</u>, 531 U.S. at 509. Likewise, if a West Virginia estoppel principle would undermine the federal interest in "protect[ing] or effectuat[ing a federal court's] judgment[,]" 28 U.S.C. § 2283, a contrary rule under federal common law is permissible.

We conclude that in the context of MDL proceedings, certification in a state court of the same class under the same legal theories previously rejected by the federal district court presents an issue sufficiently identical to warrant preclusion under federal common law.[7] We have previously recognized that "administering cases in multidistrict litigation is different from administering cases on a routine docket" and that "MDL courts must be given greater discretion to organize, coordinate and adjudicate its [sic] proceedings[.]" <u>In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.</u>, 496 F.3d 863, 867 (8th Cir. 2007) (quotation omitted).

Respondents do not dispute that the next collateral estoppel requirement, finality of the prior judgment, is met. The district court's order was a final judgment disposing of McCollins' individual claims and the class allegations, and it was not appealed within the statutory period. <u>See</u> Fed.R.App.P. 4(a)(1)(A).

The third and fourth elements of collateral estoppel are entwined: that the parties against whom the rule is asserted are the same parties or parties in privity to those in the prior action and that their interests have been adequately represented. The

---

[7]This situation is distinguishable from the non MDL class action in <u>J.R. Clearwater Inc. v. Ashland Chem. Co.</u>, 93 F.3d 176, 180 (5th Cir. 1996), where the Fifth Circuit observed that "each court–or at least each jurisdiction–[should] be free to make its own [certification] determination[,]" a comment not suited to the collateral estoppel principles of finality and uniformity which are particularly important in MDL proceedings.

-10-

Seventh Circuit concluded that the denial of class certification is binding on unnamed class members *because* they were adequately represented in the prior proceeding. Bridgestone/Firestone, 333 F.3d at 768-69. Rule 23(a)(4)'s adequacy requirement is met when the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the [absent] class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (quotations omitted). Here, the McCollins class and respondents' class are essentially the same. Both are West Virginians who purchased Baycol. Both classes rely on the same theory rejected by the district court: their ability to recover for economic loss despite the absence of a physical injury. Thus, respondents' interests were aligned with McCollins'.

Respondents argue that because the district court assumed without deciding that all 23(a) factors were met in denying class certification previously, its adequacy finding is a "*post hoc* judgment" not entitled to a preclusive effect. See Chick Kam Choo, 486 U.S. at 148. In prohibiting post hoc judgments in Chick Kam Choo, the Supreme Court clarified that injunctions must be limited to issues "actually" presented and decided by the federal court, as evidenced by "the state of the record[.]" Id. (quotation omitted). Adequacy was an "argument[] actually presented" to the district court in the briefs, id., and "vigorously argued" by counsel. Order Granting Injunction, slip op. at 15.

Although respondents argue inadequacy based on McCollins' failure to appeal the denial of certification, adequacy of representation does not depend on whether the putative representative appealed. The point of the adequacy inquiry is "to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625-26. Here, there were no conflicts of interest.

Finally, respondents argue that the court cannot assert personal jurisdiction over them absent notice and an opportunity to opt out of the previously proposed class or to participate in the litigation. These procedural due process requirements apply when

-11-

absent class members will be bound to a judgment on the merits of their claims. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985); see also Taylor v. Sturgell, 128 S.Ct. 2161, 2167 (2008) (exempting properly conducted class actions from the general prohibition on "virtual representation"). In contrast, respondents are still free to pursue individual claims in state court. As the Seventh Circuit noted, "a person who opts out [of a certified class] receives the right to go it alone, not to launch a competing class action." Bridgestone/Firestone, 333 F.3d at 769. Just as unnamed members of a certified class can challenge the propriety of a settlement, respondents could also have sought to intervene pursuant to Fed.R.Civ.P. 24 to appeal the district court's denial of class certification. See United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977); see also Bridgestone/Firestone, 333 F.3d at 768.

The nature and degree of due process protections necessary to establish personal jurisdiction depends on context. See Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 928 (8th Cir. 2009); see also Devlin v. Scardelletti, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members . . . may be parties for some purposes and not for others."). The protections available to respondents in the context of an adverse certification ruling include their right to adequate representation, their ability to appeal, and the fact that the decision still allows them to pursue their individual claims. These safeguards satisfy due process and are sufficient to bind them in personam to the district court's certification decision. Cf. In re Bayshore Ford Trucks Sales, Inc., 471 F.3d 1233, 1245 (11th Cir. 2006) (no personal jurisdiction over absent putative class member where the district court based denial of class certification on lack of adequate representation).[8] After all, respondents would have been included in a certified class in this case. "Just as they [would have] receive[d] the fruits of victory, so an adverse decision is conclusive against them." Bridgestone/Firestone, 333 F.3d at 768. As such, the court had personal jurisdiction over them.

---

[8]Contra Gen. Motors, 134 F.3d at 141 (requested injunction would have required federal court to exercise personal jurisdiction over 5.7 million class members who had already settled their claims in the state proceeding).

-12-

Since Bayer filed in McCollins, we reject respondents' argument that the court lacked subject matter jurisdiction. Bayer did not seek to remove the respondents' *case* to federal court, see Syngenta, 537 U.S. at 31-34, but rather to enjoin them, absent putative class members in this case, from relitigating certification.

III.

Even if all the collateral estoppel requirements are met,"an injunction must also be equitable in order for a federal court to issue it." Canady, 282 F.3d at 1020. We review the court's granting of a permissible injunction for an abuse of discretion. Liles v. Del Campo, 350 F.3d 742, 746 (8th Cir. 2003). The appropriateness of injunctive relief is based on several factors: "(1) the threat of irreparable harm to the movant; [sic] (2) the balance between this harm and the injury caused by granting the injunction, (3) the probability of succeeding on the merits, and (4) the public interest." Canady, 282 F.3d at 1020. We have previously held that relitigating in state court an issue previously decided in federal court constitutes irreparable harm, and that the inability to relitigate the issue is not "a legitimate harm which must be balanced" since the enjoined party "had one full and fair opportunity to litigate" it in federal court. In re SDDS, Inc., 97 F.3d 1030, 1041 (8th Cir. 1996).

Bayer has demonstrated success on the merits by showing that respondents cannot relitigate the legal conclusions in the McCollins order. Respondents argue that because their individual claims for damages are so small, as a practical matter they cannot litigate them without class status. They have no absolute right to litigate their claims as a class, however, only a right, preserved by the district court's narrowly tailored injunction, to litigate their own claims. "In addition, the public policy concerns of finality and repose informing our res judicata jurisprudence strongly supports the protection of our previous judgment." In re SDDS, 97 F.3d at 1041. These are particularly compelling concerns in an MDL proceeding involving tens of thousands of plaintiffs.

-13-

In sum, the district court did not abuse its discretion or make errors of fact or law in issuing the injunction.  Accordingly, we affirm the judgment of the district court.

_____