PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 14-8103

—————————

IN RE: NATIONAL FOOTBALL
LEAGUE PLAYERS
CONCUSSION INJURY LITIGATION

              Objecting Class Members: Sean
Morey; Alan Faneca; Ben Hamilton;
Robert Royal; Roderick Cartwright; Jeff
Rohrer; Sean Considine,
                       Petitioners

—————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-00029)
District Judge: Honorable Anita B. Brody

—————————

Argued September 10, 2014

Before: AMBRO, SMITH, and JORDAN,
*Circuit Judges*

(Opinion Filed:  December 24, 2014)

Michele D. Hangley
William T. Hangley
Hangley, Aronchick, Seagl, Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA   19103

Steven F. Molo        [ARGUED]
Thomas J. Wiegand, Esquire
Martin Totaro,
MoloLamken
540 Madison Avenue
New York, NY   10022

Eric R. Nitz
Martin Totaro
MoloLamken
600 New Hampshire Avenue, N.W.
The Watergate
Washington, DC   20037

Linda S. Mullenix
2305 Barton Creek Boulevard, Unit 2
Austin, TX   78735
        *Counsel for Petitioners*

Bruce A. Birenboim [ARGUED]
Brad S. Karp
Theodore V. Wells, Jr., Esquire

Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY   10019

Beth A. Wilkinson
Paul, Weiss, Rifkind, Wharton & Garrison
2001 K Street, N.W., Suite 600
Washington, DC   20006

Dana B. Klinges
Duane Morris
30 South 17th Street, United Plaza
Philadelphia, PA   19103

David R. Buchanan, Esquire
Diogenes P. Kekatos, Esquire
Christopher A. Seeger, Esquire
Seeger Weiss
77 Water Street, 26th Floor
New York, NY   10005

Samuel Issacharoff            [ARGUED]
New York University Law School, Room 411J
40 Washington Square South
New York, NY   10012

David D. Langfitt
Gene Locks
Locks Law Firm
601 Walnut Street
The Curtis Center, Suite 720 East

3

Philadelphia, PA   19106

Arnold Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106

Steven M. Marks
Mitrani, Rynor, Adamsky & Toland
1200 Weston Road, Penthouse
Weston, FL   33326

Dianne M. Nast
NastLaw
1101 Market Street, Suite 2801
Philadelphia, PA   19107

Stephen F. Rosenthal
Podhurst Orseck
25 West Flager Street, Suite 800
Miami, FL   33130

Sol H. Weiss
Anapol Schwartz
1710 Spruce Street
Philadelphia, PA   19103
        *Counsel for Respondents*

Alan B. Morrison
George Washington University
2000 H Street, N.W.

Washington, DC   20052

Scott L. Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC   20009
        *Amicus Counsel for Petitioners*

————————————

OPINION OF THE COURT

————————————

SMITH, *Circuit Judge.*

Thousands of retired professional football players filed suit against the National Football League and various other defendants alleging primarily that the defendants failed to take reasonable actions to protect players from the risks associated with concussive and sub-concussive head injuries. The cases were consolidated before the U.S. District Court for the Eastern District of Pennsylvania.  On July 7, 2014, the District Court issued an order that "preliminarily approved" a proposed class-action settlement agreement and "conditionally certified for settlement purposes only" the settlement class and subclasses.  Petitioners, seven retired professional football players who object to the proposed settlement agreement and class certification, filed a Federal Rule of Civil Procedure 23(f) petition for permission to appeal the District Court's July 7, 2014 order.

5

At issue in this request for interlocutory review is the nature of this Court's jurisdiction under Rule 23(f). Because the District Court's order was not an "order granting or denying class-action certification" under the plain text of the rule, we have dismissed the petition.[1]

## I.

Plaintiffs are retired professional football players who played in a member club of the National Football League ("NFL") and are not seeking active employment as players with any member club. Beginning in July 2011, retired professional football players began filing lawsuits alleging that Defendants NFL and NFL Properties, LLC (collectively "NFL Defendants") failed to take reasonable actions to protect players from the chronic risks posed by concussive and sub-concussive head injuries.[2] In January 2012, after more than 5,000 retired professional football players brought

---

[1] On September 11, 2014, we entered the following Order: "The foregoing Petition of Objecting Class Members pursuant to Federal Rule of Civil Procedure 23(f) for Leave to Appeal from the District Court's Order granting Settlement Class Certification is denied. The Court will issue an Opinion in this matter at a later time." This Opinion provides the rationale for our Order.

[2] Various plaintiffs also brought suit against a helmet manufacturer, Riddell, Inc., and several of its affiliated entities (collectively "Riddell Defendants"). The Riddell Defendants are not parties to the class-action settlement at issue in this pending Rule 23(f) petition.

suit, the Judicial Panel on Multidistrict Litigation consolidated and transferred all pending cases to the U.S. District Court for the Eastern District of Pennsylvania for inclusion in coordinated or consolidated pretrial proceedings.

Plaintiffs and the NFL Defendants (collectively "the parties") negotiated the terms of a settlement during a court-ordered mediation in the summer of 2013.[3] Plaintiffs filed their class-action complaint on January 6, 2014 and sought an order: (1) granting preliminary approval of the proposed class-action settlement agreement; (2) conditionally certifying a settlement class and subclasses; (3) appointing co-lead counsel, class counsel, and subclass counsel; (4) approving the dissemination of class notice; (5) scheduling a fairness hearing; and (6) staying claims as to the NFL Defendants and enjoining proposed settlement class members from pursuing related lawsuits. *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, Dkt. 5634 (E.D. Pa. Jan. 6, 2014).

On January 14, 2014, the District Court denied the parties' motion without prejudice. The District Court's initial denial was based on its primary concern that "not all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid." *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F.

---

[3] On July 8, 2013, the District Court directed the parties to mediation before a retired district judge. On August 29, 2013, the parties signed a term sheet incorporating the principal terms of a settlement.

Supp. 2d 708, 715 (E.D. Pa. 2014). The District Court reasoned that the proposed $670,000,000 monetary fund may be inadequate to cover the likely amount of the awards to the class members. *Id.* at 715–16.

The parties renegotiated the proposed class-action settlement and, on June 25, 2014, filed another motion for preliminary approval and conditional certification of a revised settlement agreement. The revised settlement agreement "guaranteed payment of all valid claims" but put in place "additional measures designed to prevent fraudulent claims." *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, Dkt. 6073-5 at 23–24 (E.D. Pa. June 25, 2014).[4] The parties also proposed that a "nationwide Settlement Class" be "conditionally certified, for

---

[4] The revised settlement created several avenues for compensation: (a) a Baseline Assessment Program Fund of up to $75,000,000 to offer retired NFL Football Players one baseline neuropsychological and neurological examination to identify any neurological defects, *id.* at 18–21; (b) an uncapped Monetary Awards Fund to provide payment of cash Monetary Awards and Derivative Claimant Awards to Retired NFL Football Players diagnosed with a Qualifying Diagnosis and their Representative and Derivative Claimants, *id.* at 21–27; and (c) a $10,000,000 Education Fund to support education about cognitive impairment, safety, and injury prevention with regard to football players, *id.* at 27.

8

settlement purposes only" and include three types of claimants and two subclasses.[5]  *Id.* Dkt. 6073-1 at 4, 5.

---

[5] The three types of claimants include:

(1) "All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ('Retired NFL Football Players');"

(2) "Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ('Representative Claimants'); and"

(3) "Spouses, parents, children who are dependents or any other person who properly

under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ('Derivative Claimants')."

*Id.* at 4.

The two subclasses of the Settlement Class consist of the following:

(1) "Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants; and,"

(2) "Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of Chronic Traumatic Encephalopathy."

*Id.* at 5 (footnote omitted).

10

On July 2, 2014, seven retired NFL football players (collectively "Objectors") filed an objection to the June 25, 2014 revised class-action settlement agreement. Objectors argued that the revised settlement agreement could not be certified under Rule 23 because it bargained away, without adequate representation, the rights of three distinct groups of former players: (1) those suffering from, or displaying symptoms consistent with, chronic traumatic encephalopathy who did not die before preliminary approval; (2) those who have suffered or are at risk of suffering a stroke or non-football traumatic brain injury; and (3) those who played in NFL Europe. Additional defects raised by Objectors include that: the proposed notice was false and misleading; the claims process was so onerous and confusing that it raised due process and fairness concerns; the settlement agreement was not the product of arm's length negotiation; and that class counsel conducted no discovery by which to evaluate the strength of the claims and defenses.

On July 7, 2014, the District Court issued an order and memorandum in which the "proposed Class Action Settlement Agreement [was] preliminarily approved" and "[t]he Settlement Class and Subclasses [were] conditionally certified for settlement purposes only." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197, 204 (E.D. Pa. 2014). In the District Court's supporting

---

Because we do not address the merits of Objectors' arguments, we decline to discuss whether the three types of claimants and subclasses satisfy the applicable Rule 23(a) and (b) requirements.

memorandum, it explained that Rule 23(e)(2) requires court approval of the settlement of a class action. A "Preliminary Approval of the Proposed Settlement" was set forth by the District Court as:

> "typically proceed[ing] in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). If the court concludes that the settlement is 'fair, reasonable and adequate,' the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). At this time, Plaintiffs request that I grant preliminary approval."

*Id.* at 197. After conducting a preliminary review of the settlement agreement, the District Court proceeded to analyze the parties' request for "conditional certification" of the proposed class.

12

The District Court premised its analysis of "Conditional Certification of the Settlement Class and Subclasses" with the following standard of review:

> "A court must determine whether the proposed Settlement Class and Subclasses satisfy the requirements of Federal Rule of Civil Procedure 23. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). At the preliminary approval stage, a court may conditionally certify the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing. *See Manual for Complex Litigation (Fourth)* § 21.632 (2004)."

*Id.* at 199–200.

For the purposes of effecting the proposed Rule 23(e) settlement process, the District Court appointed co-lead class counsel, class counsel, and subclass counsel, approved the dissemination of class notice, and scheduled a fairness hearing for November 19, 2014. *Id.* at 204–07. The District Court also stayed any matters as they related to the NFL Defendants and enjoined proposed class members from pursuing any related lawsuits. *Id.* at 203–204, 207. On July 21, 2014, Objectors filed this petition for leave to appeal from the District Court's July 7, 2014 order.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332 and is administering the coordinated or

13

consolidated pretrial proceedings under 28 U.S.C. § 1407. A "party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Whether we have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f) to review "an order granting or denying class-action certification" is the issue before us. A "'federal court always has jurisdiction to determine its own jurisdiction.'" *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). "We generally exercise plenary review over jurisdictional questions." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 247 (3d Cir. 2013). "If we determine that we do not have jurisdiction over this appeal, our only function remaining will be that of announcing the fact and dismissing the case." *In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, 751 F.3d 150, 155 (3d Cir. 2014) (alternations, citations, and internal quotation marks omitted).

## III.

Objectors raise various substantive challenges to the merits of the District Court's July 7, 2014 order. Before we can consider the merits of any appeal, it is first necessary to determine whether we have appellate jurisdiction. A federal appellate court generally has jurisdiction over appeals only from the entry of a final judgment by a district court, subject to certain limited exceptions. *See* 28 U.S.C. § 1291; *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 200 (1999). Such is the limited nature of federal jurisdiction that "we have

14

an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 155 (3d Cir. 2014) (quoting *Papotto v. Hartford Life & Accident Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013)) (internal quotation marks omitted). As aptly explained by Chief Justice Warren:

> "It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in the light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction."

*Carroll v. United States*, 354 U.S. 394, 399 (1957).

There are various exceptions to the general principle that appellate jurisdiction is limited to final orders. *See, e.g.*, 28 U.S.C. § 1292(a) (granting appellate jurisdiction over certain types of interlocutory orders); 28 U.S.C. § 1292(b) (allowing a district judge to certify an order involving a "controlling question of law as to which there is substantial ground for difference of opinion" and where "immediate appeal from the order may materially advance the ultimate

15

termination of the litigation"); Fed. R. Civ. P. 54(b) (permitting a district court to certify "a final judgment as to one or more, but fewer than all, claims or parties" for appellate review); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (permitting immediate appeal of an otherwise non-final collateral order under certain circumstances).

The very narrowness of appellate jurisdiction is designed to discourage piecemeal litigation. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013). Limited appellate jurisdiction prevents parties from employing tactics to "obtain review of discovery orders, evidentiary rulings, or any of the myriad decisions a district court makes before it reaches the merits of an action." *Id.* at 245–46.

**A.**

Rule 23(f) provides in relevant part: "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." Fed. R. Civ. P. 23(f). Before the enactment of Rule 23(f), it was well settled that a "class certification decision, per se, is not an appealable final order under 28 U.S.C. § 1291." *Sullivan v. Pacific Indem. Co.*, 566 F.2d 444, 445 (3d Cir. 1977). Appellate courts were generally reluctant to grant interlocutory review of class certification orders. Courts that did grant such review used various devices, such as a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), *see In re Rhone-Poulenc*

16

*Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), or exercised jurisdiction after a district court certified the non-final, interlocutory order for appellate review pursuant to 28 U.S.C. § 1292(b), *see Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996).

Yet courts were confronted by the reality that an extraordinary writ is just that, *extraordinary*. *See In re Sch. Asbestos Litig.*, 977 F.2d 764, 772 (3d Cir. 1992), *as amended* (Oct. 8, 1992) ("As the adjective 'extraordinary' implies however, courts of appeals must be chary in exercising that power: '[M]andamus must not be used as a mere substitute for appeal.' (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943))). Accordingly, even courts granting writs of mandamus did so "with an uneasiness that their actions stretched the writ's traditionally restrictive parameters." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 163 (3d Cir. 2001), *as amended* (Oct. 16, 2001). And as to § 1292(b) interlocutory appeals, these were rare because a district court must first certify an order for appellate review under limited parameters. 28 U.S.C. § 1292(b). Specifically, a district court would need to conclude that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion" and "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

It was not until the Seventh Circuit's decision in *In re Rhone-Poulenc Rorer, Inc.* to exercise mandamus that the Advisory Committee on Civil Rules began to seriously explore reforms to appellate review and federal jurisdiction

17

over class-action certification decisions. *See* Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 739 (2013). In promulgating Rule 23(f), the Advisory Committee exercised its authority under 28 U.S.C. § 1292(e) and sought to "[e]xpan[d] . . . opportunities to appeal." Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments).[6] The decision whether to allow appeal from an

---

[6] When considering the meaning of the federal rules, "it is the Rule itself, not the Advisory Committee's description of it that governs." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011). However, the Advisory Committee's notes on the federal rules are "of weight" in interpreting the meaning of the rules. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (explaining that the Advisory Committee's notes on Rule 3 "although not determinative," were "of weight" in the Court's "construction of the rule"); *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444 (1946) ("The fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency. But in ascertaining their meaning the construction given to them by the Committee is of weight.").

In *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 163 (3d Cir. 2001), Judge Scirica grounded his analysis of when we may grant a Rule 23(f) appeal on the Advisory Committee's notes. Judge Scirica stated: "The Committee Note is always a good starting point." *Id.* Similarly, Justice Scalia cited extensively to the Advisory Committee's notes in *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2558–59, when discussing whether a Rule 23(b)(2)

18

order granting or denying certification, however, was left to the "sole discretion of the court of appeals." *Id.*

Subdivision (f) was added to Rule 23 in 1998 to provide a form of interlocutory review over class-action certification decisions. The reason for adding subdivision (f) was that the class-action "certification decision is often decisive as a practical matter." *Id.* The Judicial Conference's Committee on Rules of Practice and Procedure ("Standing Committee") explained:

> "Denial of certification can toll the death knell in actions that seek to vindicate large numbers of individual claims. Alternatively, certification can exert enormous pressure to settle. Because of the difficulties and uncertainties that attend some certification decisions—those that do not fall within the boundaries of well-established practice—the need for immediate appellate review may be greater than the need for appellate review of many routine civil judgments."

1997 Report at 18–19.[7] The Advisory Committee's notes to the 1998 Amendments to Rule 23(f) provide:

---

class permitted individualized claims for damages. We consider the Advisory Committee's summary of the provisions of Rule 23(f) illuminating for purposes of our analysis, giving it such "weight" as is appropriate.

[7] *See* Report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United

19

"Appeal from an order granting or denying class certification is permitted in the *sole discretion* of the court of appeals. *No other type of Rule 23 order is covered by this provision*. The court of appeals is given *unfettered discretion* whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari."

Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments) (emphasis added).[8]

---

States and Members of the Judicial Conference of the United States 18 (September 1997) (hereinafter "1997 Report"), http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST9-1997.pdf (last visited Nov. 18, 2014).

The Rules Enabling Act of 1934, 28 U.S.C. § 2071–2077, authorizes the Supreme Court to promulgate rules of procedure. The Supreme Court has delegated the oversight of the rulemaking process to the Judicial Conference, specifically the Standing Committee. The Standing Committee has five advisory rules committees, including the Advisory Committee on Civil Rules. *See How the Rulemaking Process Works*, http://www.uscourts.gov/RulesAndPolicies/rules/about-rulemaking/how-rulemaking-process-works.aspx (last visited Nov. 18, 2014).

[8] As a comparison to the writ of certiorari, 28 U.S.C. § 1254, the Supreme Court separates the question of what the court

In light of this drafting history, parsing the text of Rule 23(f) is fundamental to understanding the nature of the interlocutory review contemplated by this provision. To begin, Rule 23(f) is premised on the notion that a court of appeals' grant of a petition for interlocutory review is discretionary. The rule states that a "court of appeals *may* permit an appeal." Fed. R. Civ. P. 23(f) (emphasis added). References in the Advisory Committee's notes that appeals are in the "sole discretion of the court of appeals" and that the court of appeals is given "unfettered discretion whether to permit the appeal" support this reading. Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments).

In *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, we recognized the discretionary nature of our review: Rule 23(f) "provide[s] for interlocutory appeal by permission of the court of appeals" and "permits the appellate courts to develop a coherent body of jurisprudence in this area." 259 F.3d at 162. There are five flexible principles from the Advisory Committee's note that may guide our exercise of discretionary jurisdiction.[9] *Id.* at 164–65. The Advisory

---

"*may* review" from what the Court "actually will *choose* to review," which is a power that is "sparingly exercis[ed]." *See Camreta v. Greene*, 131 S. Ct. 2020, 2033 (2011) (emphasis added) (quoting *Forsyth v. Hammond*, 166 U.S. 506, 514 (1897)) (exempting "one special category of cases from [the Court's] usual rule against considering prevailing parties' petitions").

[9] Those principles are: "(1) when denial of certification effectively terminates the litigation because the value of each

21

Committee's taxonomy is not exclusive, however, and is not intended to "circumscribe our discretion; there may also be other valid reasons for the exercise of interlocutory review." *Id.* at 165. Accordingly, *Newton* makes clear that the beginning text of Rule 23(f), which provides that "[a] court of appeals *may in its discretion* permit an appeal," Fed. R. Civ. P. 23(f) (emphasis added), was itself a delegation of authority to the courts of appeals to determine when to grant a Rule 23(f) motion and to develop a jurisprudence to guide such determinations.

What *Newton* and its progeny do not discuss, and what this Court has yet to address, is the *type* of order this Court may review. The plain text of Rule 23(f) provides the courts of appeals with discretion to permit an appeal from a specific type of order—that is, "*from an order* of a district court *granting or denying class-action certification*." Fed. R. Civ. P. 23(f) (emphasis added). The Advisory Committee's notes to the 1998 Amendments to Rule 23(f) explain: "No other

---

plaintiff's claim is outweighed by the costs of stand-alone litigation; (2) when class certification places inordinate or hydraulic pressure on defendants to settle, avoiding the risk, however small, of potentially ruinous liability; . . . (3) when an appeal implicates novel or unsettled questions of law; in this situation, early resolution through interlocutory appeal may facilitate the orderly development of the law," *id.* at 164; (4) when the district court's "ruling on class certification is likely erroneous," *id.* (citation and internal quotation marks omitted); or (5) when review would "facilitate development of the law on class certification," *id.* at 165.

type of Rule 23 order is covered by this provision." Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments). There is only one subdivision within Rule 23 governing class-action certification orders: Rule 23(c).[10]  In this way, the text of Rule 23(f) inextricably ties the type of order appealable to Rule 23(c).[11]

---

[10] Rule 23(c)(1) governs a class-action certification order and has three relevant clauses:

> "(A) *Time to Issue*.  At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.
>
> (B) *Defining the Class. Appointing Class Counsel.*  An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).
>
> (C) *Altering or Amending the Order*.  An order that grants or denies class certification may be altered or amended before final judgment."

Fed. R. Civ. P. 23(c).

[11] As explained in detail below, it is entirely possible for a district court to be presented with an uncertified settlement-only class that would present *both* class-action certification issues under Rule 23(a), (b), and (c) *and* settlement approval issues under Rule 23(e).  Rule 23(e), which governs class-action settlements, voluntary dismissals, or compromises, *see infra* note 15, "was designed to function as an *additional*

When Rule 23(f) was enacted in 1998, Rule 23(c) permitted a district court to "conditionally certify" a proposed class. In 2003, concerned that district courts were conditionally certifying putative class actions without undertaking a thorough analysis of the Rule 23(a) and (b) certification requirements, the Supreme Court and Congress deleted the portion of Rule 23(c)(1) that provided that class certification "may be conditional." Fed. R. Civ. P. 23(c) advisory committee's notes (2003 amendments).[12] The Advisory Committee's notes directed that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." *Id.* Rule 23(c)(1) was also altered to "require that the determination whether to certify a class" be made "at an early practicable time," rather than "as soon as practicable." *Id.* (internal quotation marks omitted). This change was made because district courts may need time "to gather information necessary to make the certification decision." *Id.* The other notable change within Rule 23(c)(1) was with relation to the

---

*requirement*, not a superseding direction, for the 'class action' to which Rule 23(e) refers." *Amchem*, 521 U.S. at 621 (emphasis added).

[12] The process to amend or enact a new federal rule of civil procedure is extensive and subject to multiple levels of review by: the Advisory Committee on Civil Rules, the Judicial Conference's Committee on Rules of Practice and Procedure, public commenters, the Judicial Conference of the United States, the Supreme Court, and Congress. *Amchem*, 521 U.S. at 620 (citing 28 U.S.C. §§ 2073, 2074).

"provision that permits alteration or amendment of an order granting or denying class certification." *Id.* The 2003 Amendments changed the "cut-off point" to alter a class-action certification order "at final judgment rather than 'the decision on the merits'" in order to avoid "the possible ambiguity in referring to 'the decision on the merits.'" *Id.* This ambiguity stemmed from the reality that after determining liability and in analyzing a remedy, there may be "the need to amend the class definition or subdivide the class." *Id.*

Under the present structure of Rule 23(c), we made clear in *Hohider v. United Parcel Service, Inc.* that a district court was no longer permitted to issue a "conditional certification." 574 F.3d 169, 202 (3d Cir. 2009).[13] In *Hohider*, we analyzed a litigation class seeking certification over "pattern-or-practice claims of discrimination under Title VII of the Civil Rights Act of 1964." *Id.* at 173–74. After

---

[13] We exercised jurisdiction in *Hohider* pursuant to 28 U.S.C. § 1292(e) and Rule 23(f). 574 F.3d at 175. In that case, the district court issued an order granting in part and denying in part the plaintiff's motion for certification. *Hohider v. United Parcel Serv., Inc.*, 243 F.R.D. 147, 245 (W.D. Pa. 2007) *rev'd and remanded,* 574 F.3d 169 (3d Cir. 2009). Unlike here, the order in *Hohider actually* certified a class (albeit not the entire proposed class). Accordingly, that order was unquestionably issued pursuant to Rule 23(c)(1). *Id.*; *Hohider*, 574 F.3d at 174–75. Because of that, we proceeded to review the class certification order for abuse of discretion. *Hohider*, 574 F.3d at 175.

25

analyzing the merits-based claims that could be subject to certification, the trial court "determined plaintiffs' claims for compensatory and punitive damages could not be certified for classwide treatment under Rule 23(b)(2)." *Id.* at 175. The trial court, however, "withheld judgment on plaintiffs' back-pay claims" reasoning that there could be "a protocol for identifying those monetary damages." *Id.* We rejected such an approach. We held that the trial court's "conditional certification of plaintiffs' request for back pay was improper" because "[a] trial court must 'make a definitive determination that the requirements of Rule 23 have been met before certifying a class.'" *Id.* at 202 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)). Our ruling was based on the "2003 amendments to Rule 23 [that] 'eliminated the language that had appeared in Rule 23(c)(1) providing that a class certification 'may be conditional.'" *Id.* (quoting *In re Hydrogen Peroxide*, 552 F.3d at 319).[14]

---

[14] The Second Circuit has taken a different approach with regard to a district court's use of the "conditional certification" terminology. In *Denney v. Deutsche Bank AG*, the Court held that district courts were still permitted to issue a conditional certification of a class for settlement purposes only. 443 F.3d 253, 269–70 (2d Cir. 2006). The *Denney* Court reasoned that the real purpose of amending Rule 23(c) was not to eliminate "conditional certification" but, instead, "to ensure that courts understood their obligations when certifying a class." *Id.* at 270. The Court concluded that in light of this intent,

"conditional certification survives the 2003 amendment to Rule 23(c)(1). Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met. These requirements should not be watered down by virtue of the fact that the settlement is fair or equitable. But if the requirements of Rule 23(a) and (b) are met, certification may be granted, conditionally or unconditionally."

*Id.* (citation omitted) (footnote omitted).

Our opinion in *Hohider* did not reference *Denney*. The cases are factually distinguishable in that *Hohider* dealt with a litigation class involving some classes that had been certified and thus could be subject to interlocutory review under Rule 23(f). Although we were not presented in *Hohider* with the same jurisdictional question we consider here, we see no reason to question its logic as applied to a settlement class. In our view, there is no support for conditional certification where the Advisory Committee wrote that the "provision that a class certification 'may be conditional' is deleted" and that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." The 2003 Amendments to Rule 23(c) indicate that a district court must make a *definitive* certification determination. This determination is not necessarily final, given the availability for revisions to a class certification order up to the time the district court issues a final judgment.

27

In short, Rule 23(f) provides the court of appeals broad discretion in granting interlocutory review, but only as to *one* type of Rule 23 order: a class-action certification order issued pursuant to Rule 23(c)(1).

**B.**

The issue of class certification pursuant to Rule 23(c)(1) may also be relevant to the treatment of class-action settlements under Rule 23(e), which provides the procedures applicable to proposed settlements, voluntary dismissals, or compromises.[15] The approval of a class-action settlement is

---

*See* Fed R. Civ. P. 23(c)(1)(C). Yet, a district court calling its certification order "conditional" or "tentative" simply cannot be making a firm determination that the class satisfies the requirements of Rule 23(a) and (b). Given this interplay, we cannot agree with the Second Circuit's interpretation of the 2003 Amendments to Rule 23(c) and reject the premise that "conditional certification" is an order subject to review under Rule 23(f).

[15] Rule 23(e) of the Federal Rules of Civil Procedure provides in full:

> "*Settlement, Voluntary Dismissal, or Compromise.* The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

28

governed by Rule 23(e)(2), which specifically requires that a

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval."

Fed. R. Civ. P. 23(e).

29

district court approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Thus, when a district court is presented with a class settlement agreement, the court must first determine that "the requirements for class certification under Rule 23(a) and (b) are met, and must separately 'determine that the settlement is fair to the class under [Rule] 23(e).'" *Sullivan*, 667 F.3d at 319 (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009)). The intent of these procedures is to provide transparency for class members and authority to the district court to act as a fiduciary for putative class members by "guarding the claims and rights of absent class members." *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

What renders these seemingly straight-forward directives less than clear is the procedural posture presented when a class-action settlement is reached before the district court has issued a certification order under Rule 23(c). The Advisory Committee's notes to the 2003 Amendments do contemplate that "the decisions on certification and settlement" may "proceed simultaneously." Fed. R. Civ. P. 23(e) advisory committee's notes (2003 amendments). Further, even where class certification has already occurred, a district court's review of a settlement "may provide an occasion to review the cogency of the initial class definition." *Id.*

The exact process a district court should follow when presented with a "settlement class" is not prescribed by Rule 23(e). A settlement class "offers defendants the opportunity

30

to engage in settlement negotiations without conceding any of the arguments they may have against class certification. Often . . . the parties never intend to litigate the claims; rather, from the time plaintiffs file the complaint, the goal on both sides is to reach a nationwide settlement." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005). Further, a district court's management of a settlement class is different from a litigation class in that the court is acting as fiduciary "to protect unnamed members of the class." *Ehrheart*, 609 F.3d at 593; *Sullivan*, 667 F.3d at 296. These differences aside, "the 'settlement only' class has become a stock device." *Amchem*, 521 U.S. at 618.

Section 21.632 of the Federal Judicial Center's *Manual for Complex Litigation* (Fourth) explains that the "[r]eview of a proposed class action settlement generally involves two hearings."[16] *Manual for Complex Litigation*

---

[16] Although the *Manual for Complex Litigation* "offer[s] helpful suggestions to judges," *Atkins v. Virginia*, 536 U.S. 304, 327 (2001), it "does not have the force of law and can not undermine Supreme Court precedent or the decisions of this court." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 442 (3d Cir. 2009); *see also Manual for Complex Litigation*, Introduction (explaining that the *Manual* "should not be cited as[] authoritative legal or administrative policy," the Federal Judicial Center has "no authority to prescribe practices for federal judges," and "[t]he *Manual*'s recommendations and suggestions are merely that").

We address the recommendation of the *Manual for Complex Litigation* principally because it was the primary

31

authority relied upon by the District Court in issuing its July 7, 2014 order. For that reason, the *Manual* is instructive only to the extent it informs the kind of order the District Court purported to issue. But our analysis regarding the meaning of the Rules themselves is in no way dependent on the *Manual for Complex Litigation*. *See supra* Section A.

Moreover, and in accordance with widespread experience, reference by appellate courts to the *Manual for Complex Litigation* when it is explicitly relied upon by a district court is commonplace. For example, the Supreme Court in *Gulf Oil Co. v. Bernard* ruled that the district court had abused its discretion in issuing an order imposing a ban on all communications concerning a class action between parties or their counsel and any actual or potential class member who was not a formal party. 452 U.S. 89, 91 (1981). The district court's order was based largely on a "Sample Pretrial Order" contained in the *Manual for Complex Litigation*. *Id.* at 93–94, 93 n.4, 94 n.5. Analyzing the applicable text of Rule 23(d) governing "Orders in Conduct of Class Actions," the Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties." *Id.* at 101. The Supreme Court explicitly rejected the district court's adoption "*in toto* [of] the order suggested by the Manual for Complex Litigation—on the apparent assumption that no particularized weighing of the circumstances of the case was necessary." *Id.* at 102–03.

32

This Court has also, and repeatedly, engaged in close analysis of the *Manual for Complex Litigation* when it was the underpinning for a decision this Court was reviewing. *See, e.g.*, *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 441 (3d Cir. 2009) (vacating the order of a district court that cited portions of the *Manual for Complex Litigation*, analyzing the portions of the order, and concluding that the *Manual* references "clearly do[] not have the force of law and can not undermine [binding authority]"); *United States v. Wecht*, 484 F.3d 194, 231 n.41 (3d Cir. 2007), *as amended* (July 2, 2007) (criticizing a district judge for expressly relying on the *Manual for Complex Litigation* in a criminal trial and noting that it applies, by its own terms, to civil litigation). The *Manual for Complex Litigation* has also been cited where it provided useful guidance in interpreting an issue pertaining to class actions. For example, in *Marcus v. BMW of North America, LLC*, we referenced general principles and ideas from the *Manual for Complex Litigation* for the proposition that the "ascertainability" standard applicable to a Rule 23(b)(3) class promotes the "best notice practicable" under Rule 23(c)(2). 687 F.3d 583, 593 (3d Cir. 2012) (citing *Manual for Complex Litigation*, § 21.222 (4th ed. 2004)). And in *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001), we cited the *Manual for Complex Litigation* as authority regarding the equitable powers of the court in settlement administration.

In short, our analysis of the District Court's July 7, 2014 order, the order's explicit reference to the *Manual for Complex Litigation*, and our explanation that the *Manual* does not adequately address how an order issued pursuant to Rule

33

§ 21.632 (4th ed. 2004) (hereinafter "*Manual for Complex Litigation*"). In the first hearing, or "preliminary fairness review," "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." *Id.* In the context of a "preliminary fairness review" of an uncertified settlement class, § 21.632 provides that "the certification hearing and preliminary fairness evaluation can usually be combined." *Id.* When combining a certification and preliminary fairness hearing:

> "The judge should make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). *See* section 21.22. If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."

*Id.* (emphasis added).

This case management technique for uncertified settlement classes makes sense, particularly from a notice perspective. Rule 23(e)(1) requires the district court to

---

23(e) relates to Rule 23(c) is analytically consistent with *Bernard* and entirely unremarkable.

34

"direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The principal purpose of this provision is "to ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement." 2 *McLaughlin on Class Actions* § 6:17 (10th ed. 2013). This notice can be sent to putative class members before the district court issues a certification order or, "[i]n cases in which a litigation class has already been certified . . . the notice of settlement may also be sent to . . . opt-outs to give them an opportunity to rejoin the class." *Id.*

The *preliminary* analysis of a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation. In the context of a Rule 23(b)(3) opt-out class, this affords defendants the opportunity to determine whether there will be sufficient participation in the class before certifying the class and dispersing any settlement fund. This also allows the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims.

Arguably, the *Manual for Complex Litigation* does not reconcile a "preliminary determination" under Rule 23(e) of class certification with the elimination of conditional certification under Rule 23(c). Although the Federal Judicial Center's current version of the *Manual for Complex Litigation* was published in 2004, it is unclear whether the drafters had the opportunity to address the nuances between

35

subdivisions (c) and (f) of Rule 23 following the 2003 Amendments.[17] Despite that, many district court judges rely, and rightfully so, on the *Manual for Complex Litigation* in managing class actions.

In light of the interplay between subdivision (c), (e), and (f) of Rule 23, we emphasize that a district court should be fastidious in its choice of language when making a "preliminary determination" as recommended by § 21.632.[18]

---

[17] The dissent quotes our use of the word 'unclear' in this sentence and writes: "What all this [Section 21.632 of the *Manual*] has to do with Rule 23(f) 'is unclear.'" The dissent rests on this language in its continued attempt to characterize this opinion as *relying on* the *Manual for Complex Litigation* to interpret the meaning of Rules 23(c) and (f), and how those Rules relate to Rule 23(e). To repeat, the *Manual* is not binding authority. In fact, the *Manual* is particularly unhelpful regarding the scope of Rule 23(f) interlocutory review given that it was published in 2004 and the relevant amendments to Rule 23(c) took effect December 1, 2003.

[18] The dissent characterizes this paragraph and various other parts of our reasoning as dicta. Broadly stated, dictum is defined "as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) (quoting *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986)). Being clear about how district courts can best navigate our holding, to avoid confusion, is

To be clear: "conditional certification" should not be a preferred term of art in this Circuit. District courts should not couch a ruling as providing "conditional certification" when they actually intend to issue a certification order at a later date. Instead, district courts should more appropriately note that they are conducting a "preliminary determination" regarding class certification for a settlement class in order to provide notice to absent class members and that they are reserving the certification decision for a later date. Conditional certification rulings are not contemplated under Rule 23(c)(1) and district courts always have the ability to

---

not something we regard as peripheral discussion. We consider it prudent to address the recommendation of the *Manual for Complex Litigation* in light of our holding regarding what type of Rule 23 order is subject to review under Rule 23(f).

Nor is the application of our holding to the facts in this case mere dicta. *See Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 66 (1996) (explaining that the "well-established rationale" of a decision is not dicta). The central basis for our holding is that the review permitted by Rule 23(f) is bound to and limited by the decision of whether to grant or deny class certification, as permitted by Rule 23(c). Applying this principle to the District Court's order is a necessary predicate to reaching our conclusion. *See Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) (explaining that reasoning in excess of what is necessary to reach a conclusion is dicta).

37

amend and alter an order before final judgment under Rule 23(c)(1)(C).  *See Hohider*, 574 F.3d at 202; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320.  Courts wishing to *actually* make a class-action certification decision at a preliminary fairness hearing should do so by issuing an order pursuant to Rule 23(c)(1) and without reference to the order being "conditional."

## C.

We hold that an interlocutory appeal pursuant to Rule 23(f) permits the court of appeals to review only an "order granting or denying class-action certification" issued pursuant to Rule 23(c)(1).  An order issued under some other subdivision of Rule 23, such as a case management order issued pursuant to Rule 23(e) that "preliminarily" or "conditionally" addresses class certification but reserves the class certification determination for a later time, does not qualify as an "order granting or denying class-action certification" that is subject to interlocutory review under Rule 23(f).[19]  Such is the case before us.  We conclude that the District Court's July 7, 2014 order that "conditionally certified" the proposed settlement class and subclasses was not issued pursuant to Rule 23(c)(1).  Instead, the District Court properly exercised its authority under Rule 23(e) and

---

[19] As always, the substance of a ruling is what matters, not its label.  An order that is for practical purposes a Rule 23(c)(1) class certification will not avoid appellate review simply because it is called something else.

38

was managing a class-action settlement agreement as requested by the parties.

The structure and text of the District Court's order and memorandum support this conclusion. Two aspects of the District Court's order are telling. First, the District Court ordered that the "proposed Class Action Settlement Agreement is *preliminarily approved*" and that the "Settlement Class and Subclasses *are conditionally certified for settlement purposes only.*" *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. at 204 (emphasis added). The order specifically couched review of the settlement agreement as "preliminary" and the class was only "conditionally certified for settlement purposes."

Second, the District Court scheduled a fairness hearing for November 19, 2014 to "consider comments on and objections to the proposed Settlement Agreement and *to consider whether*: (a) to approve the Settlement Agreement as fair, reasonable, and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, *(b) to certify the Settlement Class and Subclasses*, and (c) to enter the Final Order and Judgment as provided in Article XX of the Settlement Agreement." *Id.* at 206–07 (emphasis added). This language clearly reveals that the District Court regarded its July 7, 2014 order as having not yet reached a Rule 23(c)(1) determination on class certification.

The notice template attached to the District Court's order also made patent that the settlement itself was only "proposed" and identified the "proposed class representatives" and their lawyers. *Id.* at 208, Ex. 1. Had the

39

District Court actually certified the class, the class representatives would not have been described as "proposed," *see* Fed. R. Civ. P. 23(a)(4); rather, class counsel would have been appointed outright, *see* Fed. R. Civ. P. 23(c)(1)(B), 23(g).

Yet ultimately it is the content of the District Court's memorandum that is most telling. The District Court began its discussion of "Conditional Certification of the Settlement Class and Subclasses" with the following standard of review:

> "A court must determine whether the proposed Settlement Class and Subclasses satisfy the requirements of Federal Rule of Civil Procedure 23. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). At the preliminary approval stage, a court may conditionally certify the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing. *See Manual for Complex Litigation (Fourth)* § 21.632 (2004)."

*In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. at 199–200.

The District Court premised its Rule 23(a) and (b) analysis on the analytical approach suggested by § 21.632 of the *Manual for Complex Litigation*.[20] The District Court also

---

[20] The District Court cited to our en banc decision in *Sullivan* for the proposition that "before approving a settlement agreement, 'a district court first must determine that the

40

made clear that its preliminary approval was "for purposes of providing notice." *Id.* The District Court expressly provided in its memorandum that the proposed settlement class and subclasses "preliminarily satisf[ied]" the requirements of Rule 23(a) and (b). *Id.* at 202. The thoroughness and precision of the District Judge's memorandum indicates that had she actually wished to certify the proposed class and subclasses, she would have done so and referenced Rule 23(c)(1). We read the District Court's order and memorandum as having expertly addressed the management of a settlement class and no more.

---

requirements for class certification under Rule 23(a) and (b) are met.'" 667 F.3d at 296 (quoting *In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)). *Sullivan* does not address what a district court must do in conducting a "preliminary fairness hearing" where the district court reserves its certification ruling for a later date. Further, the rule from *Sullivan* is based on the Supreme Court's decision in *Amchem*, a case that did not address the procedural posture we face here. *Amchem* held only that for a settlement-only class "a district court need not inquire whether the case, if tried, would present intractable management problems," but that the "other specifications of [Rule 23(b)(3)] . . . demand undiluted, even heightened, attention in the settlement context." 521 U.S. at 620 (citation omitted). Further, *Amchem* was written at a time when conditional certification was expressly authorized by Rule 23(c); it could not, therefore, have addressed the procedural posture presented in this case.

41

Accordingly, the District Court's July 7, 2014 order reserved the determination of certification and fairness until after the November 19, 2014 hearing. The District Court's accompanying July 7, 2014 memorandum conducted only a basic and necessarily contingent analysis—in short, a "preliminary" analysis—of Rule 23(a) and (b) to determine whether the proposed approach to settlement and for providing notice to the putative class members were effective case management tools.

The District Court did not certify the class. Instead, it reserved the "rigorous analysis" prescribed by *Hydrogen Peroxide* until after the November 19, 2014 fairness hearing, at which a full record could be developed. We clarify for the first time for district courts in this Circuit that the *Manual for Complex Litigation*'s use of the phrase "conditional certification" should be avoided. Rather than use the word "conditional," courts in a similar procedural posture should make clear that they are making a "preliminary determination" on class-action certification for the purpose of issuing notice of settlement, and that they are reserving the issuance of a certification order until after a fairness hearing. The certification order ultimately issued must necessarily be entered before the district court approves the class settlement, *Sullivan*, 667 F.3d at 296, but need not occur before providing notice under Rule 23(e)(1). Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement.

42

Objectors disagree with this interpretation of the District Court's order and contend that five basic points govern the analysis of our jurisdiction under Rule 23(f). None of these points are persuasive.

First, Objectors argue that the District Court need not issue a "final" class-action certification order for the court of appeals to have jurisdiction. This focus on a "final" order, however, misses the point. Rule 23(c)(1)(C) provides that an "order that grants or denies class certification may be altered or amended before final judgment." Thus, all certification orders issued under Rule 23(c)(1) are as a practical matter "conditional" so far as they are subject to change before the district court enters final judgment. This means that a district court cannot grant "certification on the condition" that a Rule 23(a) or (b) certification requirement is later met. *Hohider*, 574 F.3d at 202. The District Court premised its analysis on providing notice to absent class members *before* issuing an order on certification or approving the settlement agreement. Rather than limit Rule 23(f) appeals to "final" orders, our holding today is simply that a district court must issue *an order* pursuant to Rule 23(c)(1) before we have jurisdiction to conduct interlocutory review pursuant to Rule 23(f).

Objectors' second point is that Rule 23(f) is intended to afford an opportunity for prompt correction of a district court's error to spare the parties significant litigation or settlement costs. Here the District Court has yet to commit any error that we could correct. In fact, the very purpose of the July 7, 2014 order was to provide putative class members with notice so that they could meaningfully participate in the fairness hearing. Reviewing the July 7, 2010 order now

43

would "greatly undermine the policy against piecemeal litigation." *Camesi*, 729 F.3d at 246.

Regarding the issues of litigation and settlement costs, Objectors erroneously focus on the typical pressures facing a litigation class rather than a settlement class. In a traditional litigation class, after a class-action certification order, the result could "sound the 'death knell' of the litigation on the part of the plaintiffs" or place "hydraulic pressure on defendants to settle." *Newton*, 259 F.3d at 162, 164 (citation and internal quotation marks omitted). Because the District Court reserved issuing its class certification order until *after* the fairness hearing, we are left with dead silence rather than a death knell. Moreover, there can be no application of hydraulic pressure where there has been no application of force at all. Here, NFL Defendants elected to negotiate a settlement agreement. The District Court's "preliminary determination" regarding class certification did not so pressure NFL Defendants that they were forced to settle the pending lawsuits.

Third, Objectors cite to the "unfettered discretion" granted to courts of appeals in permitting a Rule 23(f) interlocutory appeal. As noted above, this cherry-picked phrase from the Advisory Committee's notes to the 1998 Amendments fails to distinguish between the different textual components of Rule 23(f). Although the word "may" gives the courts of appeals unfettered discretion, that discretion is only applicable to appeals "from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f).

44

We grant that there is some ambiguity in the 1998 Amendments regarding the type of order that may be subject to interlocutory review under Rule 23(f). The Advisory Committee's notes to the 1998 Amendments to Rule 23(f) provide:

> "The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is *tentative*. Even to a *firm certification decision*, a statement of reasons bearing on the probably [*sic*] benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless."

Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments) (emphasis added). References to a "*tentative*" versus a "*firm certification decision*" may indicate to some that "preliminary" or "conditional" certification decisions are properly subject to interlocutory review.

Although the Advisory Committee did not revise or cross reference these comments in the 2003 Amendments to Rule 23(c), the text of Rule 23(f) did not require such a revision. Rule 23(f) is tied by reference to "an order granting or denying class-action certification." Therefore, an order is only reviewable under 23(f) once a district judge has actually issued an order granting or denying class certification under

45

Rule 23(c)(1).  As in the game itself, we do not have instant replay over all aspects of the parties' progression prior to that point. *Cf.* Official Playing Rules of the National Football League, R. 15, § 9, Art. 5 (2013 ed.) (no jurisdiction to review an official's determination as to what down it is).

Accordingly, any "unfettered discretion" held by the courts of appeals would be applicable to only "an order granting or denying class certification . . . . *No other type of Rule 23 order is covered by this provision*."  Fed. R. Civ. P. 23(f) advisory committee's notes (1998 amendments) (emphasis added).  Any question of what the Advisory Committee might have meant when referencing "tentative" is meaningless considering that "tentative" or "conditional" class-action certification orders are no longer permitted under Rule 23(c).

Objectors fourth point is that we should evaluate a district court's "ruling on class certification" that is "likely erroneous."  *See Newton*, 259 F.3d at 164.  This position presumes that there is a ruling available to analyze, which there is not.  That ruling is destined to be issued now that the District Court has conducted the November 19, 2014 fairness hearing.  The use of the phrase "likely" in *Newton* cannot be read to imply that we should anticipate how a district court might err based on a Rule 23(e) preliminary determination of class certification.  If such a reading of *Newton* were given warrant, courts of appeals could meddle at will in the district courts' careful and thoughtful management in reviewing class settlement agreements.

46

Objectors' final point also relies on *Newton* and our statement that our discretion to grant interlocutory review may be based on any consideration we deem persuasive. *See id.* at 165. This argument continues to misconstrue *Newton* as an answer to the open question before us: precisely what qualifies as an "order granting or denying class-action certification"? *See* Fed. R. Civ. P. 23(f). Although we "may permit an appeal" only from such an order, the discretion inherent in the word "may" cannot undermine the fact that Rule 23(f) pertains only to *one* type of order under Rule 23.

As a final matter, both parties cite to the Eighth Circuit's decision in *Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003), as supporting their respective positions. Objectors argue that *Liles* stands for the proposition that an interlocutory appeal of an order granting preliminary proposed or "conditional" certification may be permitted under Rule 23(f). This contention stretches the logic of *Liles*. *Liles* did not address the scope of the court of appeals' jurisdiction under Rule 23(f). The Eighth Circuit held the following:

> "We conclude that an interlocutory appeal would be premature *in this case. Several steps remain before the district court finally approves class certification and any settlement.* To permit an appeal at this stage would unnecessarily delay the resolution of the litigation and further jeopardize the limited assets available for resolving the claims. Permission for an interlocutory appeal of the conditional class certification should therefore be denied."

47

*Id.* at 746 (emphasis added).

Objectors quote the *Liles* Court's statement that an interlocutory appeal "would be premature *in this case*," *id.*, and argue that there may be some case presenting a conditional certification question that would properly be addressed under Rule 23(f). A reading of the full paragraph, however, reveals that the Eighth Circuit was hesitant to review a district court's order that does not "approve[] class certification and any settlement." *Id.* As in this case, the *Liles* litigation involved a "joint motion for preliminary approval of a settlement agreement and for conditional class certification" that resulted from settlement negotiations. *Id.* at 744. The more sound reading of *Liles* is that there is simply nothing for a court of appeals to review under Rule 23(f) before the district court issues a certification order under Rule 23(c). Objectors' interpretation of *Liles* is unpersuasive and the facts of this case present precisely the same problem, i.e., that there is nothing to review until the district court issues its certification order following the fairness hearing.

In sum, the District Court's order and memorandum pursuant to Rule 23(e) that provided preliminary approval of the proposed class "for settlement purposes only" and explicitly reserved its certification order for a later date was not a class-action certification order under Rule 23(c). Accordingly, this Court lacks jurisdiction over Objectors' petition.

**IV.**

48

Because the District Court has yet to issue "an order granting or denying class-action certification," we have dismissed the Rule 23(f) petition for lack of jurisdiction by our Order of September 11, 2014.

In re: NFL Players Concussion Injury Litigation
No. 14-8103

_____

AMBRO, <u>Circuit Judge</u>, dissenting

Petitioners seek, under Federal Rule of Civil Procedure 23(f), our review of Judge Brody's "conditional certification" of a settlement class and subclasses as "preliminarily satisfy[ing] the requirements of Rule 23." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 202 (E.D. Pa. 2014). My colleagues dismiss the petition for lack of jurisdiction because they deem "conditional" class-certification orders as no longer proper under Rule 23(c), the only provision in Rule 23 directly concerning class certifications. As I believe Rule 23(f) authorized (and for sure nowhere limits—in word or intent) our review of the order Judge Brody entered, I would deny the petition for review because granting it would result in inefficient (indeed, chaotic) piecemeal litigation that would interfere with the formal fairness hearing on the settlement. Though in either case petitioners lose, I dissent from my colleagues' means to that end.

Federal Rule of Civil Procedure 23(f), adopted in 1998, states that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." Per the Advisory Committee Note for this provision, permission is "in the sole discretion of the court of appeals," which

> is given *unfettered discretion* whether to permit the appeal, akin to the discretion exercised by

the Supreme Court in acting on a petition for certiorari.

* * *

> The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is *tentative*.

Fed. R. Civ. P. 23(f) Advisory Committee's Notes (1998 amendments) (emphases added).

Five years later, Federal Rule of Civil Procedure 23(c)(1) was modified to eliminate class certifications that "may be conditional" on later proof that a proper class exists. Thus a "court that is not satisfied that the requirements of Rule 23 [in effect, sections (a) and (b)] have been met should refuse certification until they have been met." Fed. R. Civ. P. 23(c) Advisory Committee's Notes (2003 amendments). No change to section (f) occurred, nor was there any Advisory Committee comment as to the effect of the (c)(1) change on section (f). The blink response, both textual and logical, is that appellate courts still have "unfettered discretion" to review class-certification orders of any kind—whether conditional (especially so where a court is not satisfied that there exists what Rule 23 requires to certify a class) or not.

The Federal Rules of Civil Procedure have as thorough a review process as any I know (or can imagine). In practice, that process begins with the Advisory Committee on Civil Rules, which is comprised of civil procedure experts from the judiciary and academia and is advised by one or more reporters assigned to it. The Advisory Committee reviews

2

suggestions for Rules changes and drafts proposed new Rules and Rules amendments along with annotated notes of explanation. When the Advisory Committee decides to recommend an amendment, it seeks approval from the Judicial Conference's Committee on Rules of Practice and Procedure (the "Standing Committee") to publish a proposed amendment for comment from the bench, bar and public. The comment period lasts at least six months and includes public hearings. The Advisory Committee reviews the comments and hearing testimony, typically makes changes to the proposed Rules (if substantial, an additional period for notice and comment usually follows), and forwards those changes to the Standing Committee along with any minority views of Advisory Committee members. If the Standing Committee approves the proposals of the Advisory Committee, it forwards them to the Judicial Conference of the United States (which includes at its head the Chief Justice of the United States) along with the Advisory Committee's report and the Standing Committee's own recommendations. If approved by the Judicial Conference, and Congress does not act otherwise, the Rules go into effect. *See How the Rule Making Process Works, Overview for the Bench, Bar and Public*, United States Courts, http://www.uscourts.gov/RulesAnd Policies/rules/about-rulemaking/how-rulemaking-process-works/overview-bench-bar-public.aspx (last visited Nov. 30, 2014). What all this means is that experts on civil procedure review all content of the Federal Rules of Civil Procedure. It is the opposite of "legislative history" drafted two weeks after a floor amendment passes in Congress.

In reviewing any Civil Rules dispute, a court's intent is to follow the drafters' intent. The latter is taken from a Rule's words and the accompanying Advisory Committee Notes. As we know from reading the Rules and their Notes, little is left to the imagination. In this case, the text of Rule 23(f) grants without restriction the authority to consider

3

appeals from orders granting or denying class certification, and its Advisory Committee Note makes clear the grant is so unconstrained that it is the equal of the discretion given the Supreme Court to grant *certiorari*. If, for example, an order certified a class without findings that Rule 23 requirements are met (hence a conditional order), a court of appeals can rule that this is improper and deny the appeal. This is what our Court did in *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 202 (3d Cir. 2009).

Despite this, my colleagues think the change in 2003 to subsection (c)(1) annuls the jurisdiction of an appellate court even to consider an appeal from a conditional class-certification order. Their logic at base is that a change in 2003 to circumscribe Rule 23(c)(1) must intend a change to 23(f) such that no longer can there be appeals literally "from an order granting . . . class action certification," but only from an order "issued pursuant to Rule 23(c)(1). An order . . . that 'preliminarily' or 'conditionally' addresses class certification but reserves the class certification determination for a later time, does not qualify as an 'order granting or denying class-action certification' that is subject to interlocutory review under Rule 23(f)." Maj. Op. at 37-38. In layperson-speak, the drafters somehow forgot to limit "order" in section (f) or to change the Advisory Committee Note to that section. I cannot go for this overstretch when the words of Rule 23(f) are nowhere short of clear and the consequence is that a federal appellate court gives back jurisdiction given it by our Rules drafters and those who must approve that grant.

A textualist (one who seeks the meaning of a statute or regulation by reviewing its actual words without resort to extratextual sources) begins with the text of Rule 23(f), and so does Judge Smith, a well-regarded textualist. Indeed, he claims here to rely on "plain text." *Id.* at 6, 22. That's ironic, as the Rule's direct text gives appellate courts the discretion

4

to allow interlocutory appeals from class-certification orders. But, says Judge Smith, the "*type* of order" has yet to be addressed. *Id.* at 22 (emphasis in text). Only one "subdivision within Rule 23 govern[s] class-action certification orders: Rule 23(c)." *Id.* Though in 1998 it allowed district courts to certify a class conditionally, that authority, he believes, was taken away in 2003 when "a district court was no longer permitted to issue a 'conditional certification.'" *Id.* at 25 (citing *Hohider*, 574 F.3d at 202).

What is interesting in citing our 2009 decision in *Hohider* is that there our Court noted that it had "jurisdiction over this interlocutory appeal [involving, among other things, an improper conditional certification of a class] under . . . Fed. R. Civ. P. 23(f)." 574 F.3d at 175, 202. Despite the 2003 amendment to Rule 23(c), in 2009 we had the appellate authority to tell a district court that it may not certify a class conditionally. My colleagues acknowledge this by their statement that *Hohider* "*held* that the trial court's '*conditional* certification . . . was improper.'" Maj. Op. at 25-26 (emphases added) (quoting *Hohider*, 574 F.3d at 202).

The exercise of jurisdiction over a conditional certification is what our Second Circuit colleagues did as well in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 269-70 (2d Cir. 2006), though there the Court went further to hold that "conditional certification survives the 2003 amendment to Rule 23(c)(1)," *id.* at 270. The Eighth Circuit also did not question its jurisdiction to review a conditional certification order in *Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003). (I note that the Eighth Circuit's opinion in *Liles* issued only the day after the 2003 amendments to Rule 23(c) went into effect, and the Court did not address directly its jurisdiction. That said, the proposed changes to (c) were in circulation many months before they were effective.)

So how, five years after *Hohider*, can our Court pronounce that we have no jurisdiction? Here is my colleagues' take. Judge Brody's order that, in her words, "conditionally certified" the proposed settlement class and subclasses was not issued pursuant to Rule 23(c)(1). Instead, "[she] exercised [her] authority under Rule 23(e) [which covers settlement procedures for class action settlements] and was managing a class-action settlement agreement." Maj. Op. at 38. However, as "[t]he exact process a district court should follow when presented with a 'settlement class' is not prescribed by Rule 23(e)," *id.* at 30, the *Manual for Complex Litigation* (4th ed. 2004) is consulted even though my colleagues concede it

> "does not have the force of law and can not undermine . . . decisions of this court." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 442 (3d Cir. 2009); *see also Manual for Complex Litigation*, Introduction (explaining that the *Manual* "should not be cited as[] authoritative legal or administrative policy," the Federal Judicial Center has "no authority to prescribe practices for federal judges," and "[t]he *Manual*'s recommendations and suggestions are merely that").

Maj. Op. at 31 n.16.

Notwithstanding these statements to the contrary, *id.* at 31-33 n.16; *id.* at 35 n.17, my colleagues in effect move the *Manual* above the Rule and its commentary. They do so as follows. Section 21.632 of the *Manual* provides that "the certification hearing and preliminary fairness evaluation can usually be combined." In doing so, "'[t]he judge should make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of

6

the subsections of Rule 23(b).'" Maj. Op. at 33-34 (quoting *Manual for Complex Litigation* § 21.632 (emphasis added in quote)). Calling this a "case management technique," *id.* at 34, to ensure notice to absentee class members, "[t]he *preliminary* analysis of a proposed class is therefore a tool for settlement." *Id.* (emphasis in text).

What all this has to do with Rule 23(f) "is unclear." *Id.* at 35. But there is an "interplay between subdivision (c), (e), and (f) of Rule 23, [and my colleagues] emphasize that a district court should be *fastidious* in its choice of language when making a 'preliminary determination' as recommended by § 21.632 [of the *Manual*]." *Id.* at 36 (emphasis added).

What's the point? "To be clear: 'conditional certification' should not be a preferred term of art in this Circuit. District courts should not couch a ruling as providing 'conditional certification' when they actually intend to issue a certification order at a later date." *Id.* at 37. Our Court, though it does not have the jurisdiction to tell Judge Brody that her "conditional certification" is not the right call sign, nonetheless in several pages of *dicta* tells her so.

My take on my colleagues' reasoning is, to quote the late Hollywood film producer Samuel Goldwyn, "Include me out." Here's why. Our highly experienced and respected District Court colleague knew exactly what she was doing. Judge Brody "conditionally certified" a class and subclasses "for settlement purposes only." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. at 204. She did so after analyzing the requirements of Rule 23(a) and (b), *id.* at 199-202, and found that the proposed settlement class and subclasses "preliminarily satisf[ied]" those requirements, *id.* at 202. This was not the type of premature and unanalyzed approval of a *litigation* class that Rule 23(c) meant to bar

because conditional certifications of litigation classes give inordinate leverage to plaintiffs' class counsel to force a settlement not called for under closer scrutiny. Rather, Judge Brody, after satisfying herself that the relevant Rule 23(a) and (b) requirements were met, provisionally certified a class already *set to settle* once that settlement is found to be fair at a later hearing. (Indeed, she gave "preliminary approval" of the proposed settlement after making a "preliminary fairness evaluation" of it. *Id.* at 197-99.) That certification was needed to know to whom notice and the settlement should be sent. The use of "conditional" in this context is thus not *verboten* under subsection (c)(1). Indeed, conditional certifications for settlement classes continue after 2003. S*ee Denney*, 443 F.3d at 269-70; *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1215 (11th Cir. 2012) (noting the use of conditional certification by the district court).

Even if we assume Judge Brody used "conditional" incorrectly, "an error in the class certification decision that does not implicate novel or unsettled legal questions may still merit interlocutory review given the consequences likely to ensue . . . . [W]e emphasize that the courts of appeals have been afforded the authority to grant or deny [Rule 23(f)] petitions 'on the basis of any consideration that the court of appeals finds persuasive.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 164-65 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23(f) Advisory Committee's Notes (1998 amendments)).

\* \* \* \* \*

My colleagues and I can agree that appellate courts should be reluctant to review class-certification orders on an interlocutory basis. To me that is enough. To go so far further by holding that we lack even the power to do so here is a bridge too far (especially in the wake of *Hohider* and no

8

other Circuit after 2003 finding its jurisdiction lost for interlocutory appeals of conditional class certifications). There is no support for ceding jurisdiction in the words of Rule 23(f), the Advisory Committee Note for that section, or subsection (c)(1). To seek that support in the *Manual for Complex Litigation*, which tells us it is not to be cited as authority, "complexifies" what is simple: appellate courts have "unfettered discretion" to consider any order that grants or denies class-action certification. Those certification orders were circumscribed in 2003 to ones that require more careful attention to the well-understood requirements of Rule 23(a) and (b). That occurred without *any* change to the unconstrained review of certification orders given to appellate courts only five years earlier. Hence Rule 23(c) does not bleach out the simple and direct words of Rule 23(f).

If Rule 23(f) appellate jurisdiction is to be limited, it must come from its drafters amid the well-conceived approval process in place. In the meantime, not to follow the words of Rules in place substitutes us as their drafters and makers of policy. As that is too active a role for a court, I respectfully dissent.